UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DAVID WILLIAMS,

                Plaintiff,

      -against-

COUNTY OF NASSAU, INCORPORATED VILLAGE OF
HEMPSTEAD, VILLAGE OF HEMPSTEAD LIEUTENANT
MONTERA, VILLAGE OF HEMPSTEAD POLICE OFFICER
MICHAEL HOLLY, VILLAGE OF HEMPSTEAD POLICE
OFFICER JAMES MORRIS, VILLAGE OF HEMPSTEAD
POLICE OFFICER GABRIEL TORRES, JOHN DOE NASSAU
COUNTY POLICE DEPARTMENT OFFICERS,

                Defendants.

Civil Action No. 14-CV-5959
(JFB) (AKT)

---

## MEMORANDUM OF LAW IN SUPPORT OF
## VILLAGE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

**HARRIS BEACH PLLC**
*Attorneys for Village Defendants*
333 Earle Ovington Blvd., Suite 901
Uniondale, New York 11553
Tel: (516) 880-8484
Fax: (516) 880-8483

Submitted By:
William J. Garry, Esq.
Kadion D. Henry, Esq.

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

    *The Incident (Assault and Stabbing)* ........................................................................ 2

    *The Plaintiff's Attempt to Flee and his Apprehension by Nassau County Police* ..................... 3

    *The Show-Up* ........................................................................................................ 4

    *Plaintiff's 40-Minute Wait at the Hempstead Police Station* ......................................... 5

    *Plaintiff's Interrogation, Booking, Charge and Detention at the Nassau County Police Station* ........................................................................................................ 6

LEGAL STANDARD ..................................................................................................... 7

ARGUMENT .................................................................................................................. 7

    POINT I      THE VILLAGE DEFENDANS DID NOT ARREST THE PLAINTIFF ........................................................................ 7

    POINT II     PROBABLE CAUSE TO ARREST AND SEARCH THE PLAINTIFF EXISTED.  THEREFORE, THE VILLAGE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FALSE ARREST AND SEARCH AND SEIZURE CLAIM ........................................................ 9

    POINT III    THE VILLAGE DEFENDANTS DID NOT MALICIOUSLY PROSECUTE THE PLAINTIFF ..................................... 16

    POINT IV    THERE IS NO EVIDENCE TO SUPPORT THE PLAINTIFF'S CLAIM FOR SUPERVISORY LIABILITY ......................... 17

    POINT V     THERE IS NO EVIDENCE TO SUPPORT THE PLAINTIFF'S CLAIM FOR MUNICIPAL LIABILITY ........................... 17

    POINT VI    THERE IS NO EVIDENCE TO SUPPORT THE PLAINTIFF'S CLAIM OF MALICIOUS ABUSE OF PROCESS ................. 18

    POINT VII   THE INDIVIDUAL VILLAGE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ................................. 19

POINT VIII    PLAINTIFF'S STATE LAW CLAIMS MUST BE DISMISS FOR
              PLAINTIFF'S FAILURE TO SERVE A NOTICE OF CLAIM
              WITHIN 90 DAYS AFTER THE STATE LAW CLAIMS AROSE.............21

POINT IX      THE COURT DOES NOT HAVE AUTHORITY TO GRANT
              PLAINTIFF LEAVE TO FILE A LATE NOTICE OF CLAIM....................24

CONCLUSION.........................................................................................................25

# TABLE OF AUTHORITIES

Page

**Cases**

*Bailey v. City of New York*, 79 F.Supp.3d 424 (E.D.N.Y. 2015)...................................................22

*Bernard v. United States*, 25 F.3d 98 (2d Cir. 1994)...................................................................10

*Boose v. City of Rochester*, 71 A.D.2d 59 (4th Dept 1979)..........................................................22

*Caceres v. Port Auth. of New York and New Jersey*,
    631 F.3d 620 (2d Cir. 2011)...........................................................................................23

*Campo v. Wolosin*, 211 A.D.2d 660 (2d Dept 1995)...................................................................22

*Colon v. City of New York*, 60 N.Y.2d 78 (1983)........................................................................16

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir 1995)..........................................................................17

*Cook v. Sheldon*, 41 F.3d 73 (2d Cir. 1994)..............................................................................19

*Curley v. Vil. of Suffern*, 268 F.3d 65 (2d Cir 2001)...................................................................10

*D'Arnico v. City of New York*, 132 F.3d 145 (2d Cir. 1998).........................................................7

*DeCarolis v. Town of Vienna*, 322 Fed.Appx 25 (2d Cir. 2009)...................................................23

*Dickerson v. Napolitano*, 604 F.3d 732 (2d Cir 2010)................................................................16

*Dunaway v. New York*, 442 U.S. 200 (1979).........................................................................7, 10

*Dunaway v. New York*, 442 U.S. 200 (1979)............................................................................10

*Finnegan v. Fountain*, 915 F.2d 817 (2d Cir. 1990)...................................................................19

*Gill v. Mooney*, 824 F.2d 192 (2d Cir. 1987)............................................................................17

*Gonzalez v. City of Schenectady*, 728 F.3d 149 (2d Cir 2013)....................................................15

*Hardy v. New York City Health & Hosp. Corp.*,
    164 F.3d 789 (2d Cir. 1999)......................................................................................21, 23

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)..............................................................................19

*Hartline v. Gallo*, 546 F.3d 95 (2d Cir. 2008) .................................................................. 18

*Hernandez v. Keane*, 341 F.3d 137 (2d Cir. 2003) .......................................................... 17

*Houston v. Nassau County*, 2011 WL 477732 (E.D.N.Y. 2011) .................................... 11

*Humphrey v. Cnty. of Nassau*, 2009 WL 875534 (E.D.N.Y. 2009) ............................... 25

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 NY3d 132 (2009) ....................... 23

*Jean-Laurent v. Bowman*, 2014 WL 4662221 (E.D.N.Y. 2014) ..................................... 23

*Jocks v Tavernier*, 316 F.3d 128 (2d Cir. 2003) ............................................................ 10

*Kilburn v. Vil. of Saranac Lake*, 413 Fed. Appx. 362 (2d Cir. 2011) ............................ 11

*Lebowitz v. City of New York*, 606 Fed. Appx. 17 (2d Cir 2015) .................................. 11

*Lennon v. Miller*, 66 F.3d 416 (2d Cir. 1995) ................................................................. 10

*Linder v. City of New York*, 263 F.Supp.2d 585 (E.D.N.Y. 2003) ................................. 17

*Maier v. New York City Police Dep't*,
 2009 WL 2915211 (E.D.N.Y. 2009) .............................................................................. 25

*Maloney v. Cnty. of Nassau*, 623 F. Supp. 2d 277 (E.D.N.Y. 2007) ............................ 21

*Maron v. County of Albany*, 166 Fed. Appx. 540 (2d Cir 2006) .................................... 16

*Michigan v. Chesternut*, 486 U.S. 567 (1988) ............................................................. 7, 9

*Monell v. Department of Social Services of the City of New York*,
 436 U.S. 658 (1978) ................................................................................................. 17, 18

*Pearson v. Callahan*, 555 U.S. 223 (2009) .................................................................... 19

*Pierson v. City of New York*, 56 N.Y.2d 950 (1982) ...................................................... 24

*Pilitz v. Inc. Vill. of Rockville Ctr.*, 634 F. Supp. 2d 317 (E.D.N.Y. 2009) ................... 24

*Ragin v. City of New York*, 222 A.D.2d 678,
 636 N.Y.S.2d 83 (2nd Dept. 1995) ................................................................................ 24

*Rivas v. Suffolk Cnty.*, 326 F. Supp. 2d 355 (E.D.N.Y. 2004) ...................................... 16

*Roche v. Vil. of Tarrytown*, 309 A.D.2d 842 (2d Dept 2003) ........................................ 23

*Savino v. City of New York*, 331 F.3d 63 (2d Cir.2003) ................................................... 19

*Schnitter v. City of Rochester*, 556 Fed. Appx. 5 (2d Cir 2014) ................................................... 11

*Scotto v. Almenas*, 143 F.3d 105 (2d Cir. 1998) ................................................... 7, 21

*Shain v. Ellison*, 273 F.3d 56 (2d Cir. 2001) ................................................... 19

*Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110 (2d Cir. 1995) ................................................... 11

*Singer v. Fulton County Sheriff*, 63 F.3d 110 (1995) ................................................... 10

*Stansbury v. Wertman*, 721 F.3d 84 (2d Cir 2013) ................................................... 15

*Stephenson v. Doe*, 332 F.3d 68 (2d Cir. 2003) ................................................... 19

*Townes v. New York*, 176 F.3d 138 (2d Cir. 1999) ................................................... 19

*Vitali v. City of New York*, 613 N.Y.S.2d 270 (2nd Dept. 1994) ................................................... 24

*Waldron v. Milana*, 541 Fed. Appx. 5 (2d Cir 2013) ................................................... 15, 16

*Wallace v. Kato*, 549 U.S. 384 (2007) ................................................... 22

*Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996) ................................................... 9, 10

**Statutes**

42 U.S.C. § 1983 ................................................... 1, 9, 10, 17

C.P.L. § 710.30 ................................................... 15

GML § 50-e ................................................... 21

GML § 50-e(5) ................................................... 24

**Rules**

Fed R. Civ. P. 56(a) ................................................... 7

Fed. R. Civ. P. 56(e) ................................................... 7

## <u>PRELIMINARY STATEMENT</u>

This action arises from Nassau County Police Department's arrest of the Plaintiff David Williams on July 15, 2013.  The Plaintiff was arrested and charged with two felonies.  Based on the arrest by Nassau County Police Department, Plaintiff spent approximately eight (8) days in jail under the custody and control of Nassau County before a Grand Jury returned a *no true bill* with respect to the charges.

As a result of the confinement, the Plaintiff commenced the instant § 1983 action against the Incorporated Village of Hempstead (the "Village"), Village of Hempstead Lieutenant Montera ("Lt. Montera"), Village of Hempstead Police Officer Michael Holly ("Officer Holly"), Village of Hempstead Police Officer James Morris ("Officer Morris"), and Village of Hempstead Police Officer Gabriel Torres ("Officer Torres") (collectively referred to hereinafter as the "Village Defendants"). (*See* Amended Complaint ("Comp.") annexed as **Exhibit "A"**.)[1] Plaintiff alleges claims for false arrest and unlawful search and seizure, malicious prosecution, supervisor liability, municipal liability, and malicious abuse of process.  (Comp. ¶¶ 30-70.)  Plaintiff also alleges state law claims for false arrest, malicious prosecution, *respondeat superior*, negligent hiring, training, supervision and retention.  (Comp. ¶¶ 71-91.)

Village Defendants denied all of Plaintiff's allegations set forth against them in the Amended Complaint in its Answer. (*See* Village Defendants' Answer ("Ans.") annexed hereto as **Exhibit "B"**.)  None of Plaintiff's claims against the Village Defendants have any merit.  As such, the Village Defendants are entitled to summary judgment.

---

[1] All exhibits referred to herein are annexed to the Declaration of William J. Garry in Support of Motion for Summary Judgment.

## **STATEMENT OF FACTS**

The following material facts are uncontroverted:

*The Incident (Assault and Stabbing)*

On July 15, 2013, the Plaintiff went to the Hempstead Bus Terminal to peddle loose cigarettes with his friends, Thomas White ("White"), and a female, named Tasha.  (*See* Plaintiff's deposition transcript annexed as **Exhibit "C",** pg. 23, ln. 18-pg. 26, ln. 15.)  While Plaintiff was peddling cigarettes with his cohorts, a male, now known as James Dwyer ("Dwyer" and/or the "victim"), approached Tasha and begged a cigarette.  (Ex. C, pg. 28, ln. 12-pg. 29, ln. 12.) This made the Plaintiff upset, so he intervened and confronted Dwyer. (Ex. C, pg. 31, lns. 6-12.) Thereafter, Plaintiff's friend, White, approached Dwyer and a heated argument developed.  (Ex. C, pg. 29, lns. 13-16.) White said to Dwyer, "What's the problem, do you want to fight?" (Ex. C, pg. 31, lns. 13-20.) Dwyer, answered "Yes."  (Ex. C, pg. 31, lns. 23-24.) White and Dwyer walked off and the Plaintiff followed them. (Ex. C, pg. 32, ln. 23-pg. 33, ln. 3.)  Plaintiff testified, "Thomas wouldn't fight inside the bus terminal. That's where he makes his money." (Ex. C, pg. 33, lns. 9-10.)

Dwyer testified that, while he and White were walking, the Plaintiff used his fist to deliver a blow to his head.  (*See* James Dwyer's deposition transcript annexed as **Exhibit "D"**, pg. 15, lns. 2-21).  Plaintiff claimed that Dwyer punched him first.  Plaintiff testified that he punched Dwyer in response to Dwyer punching him, then they tussled and fell to the ground (Ex. C, pg. 34, lns. 11-25.).  Seeing the Plaintiff and Dwyer fighting, White, as well as two other men, that the Plaintiff claims not to know, joined in the fighting and beat Dwyer.  (Ex. C, pg. 34, lns. 15-22.)  When the men dispersed, Plaintiff testified, Dwyer was "bleeding like crazy".  (Ex. C, pg. 34, ln. 15.)  Dwyer sustained one or more stab wounds to his back. (Ex. D, pg. 18, lns. 14-21.)

2

*The Plaintiff's Attempt to Flee and his*
*Apprehension by Nassau County Police*

Plaintiff and White fled the scene to a nearby liquor store where they bought one bottle of liquor to share.  (Ex. C, pg. 39, ln. 20-pg. 40, ln. 11; pg. 70, ln. 17.)  They then attempted to flee farther from the scene of the assault and stabbing by boarding a bus to go to Centennial Park in Roosevelt, but were intercepted and apprehended by Nassau County Police Officers Michael O'Brien ("Officer O'Brien") and Michael Throo (Officer Throo").  (Ex. C, pg. 70, ln. 23-pg. 71, ln. 18.)

At his deposition, Officer O'Brien testified that a male of Asian descent approached him on July 15, 2013, while he and Officer Throo were standing at 40 Main Street and informed them that a stabbing occurred in the bus terminal, together with a description of Plaintiff and his friend, White.  (*See* Police Officer Michael O'Brien's deposition transcript annexed hereto as **Exhibit "E"**, pg. 37, ln. 19-pg. 38, ln. 14.)  Officer O'Brien testified that while the Asian male witness was reporting the stabbing, coincidentally, both Plaintiff and White were seen across the street.  (Ex. E, pg. 39, ln. 9-pg. 40, ln. 15.)  Officer O'Brien testified that the description of Plaintiff and White was "unique" because the description stated that one of the men was tall and the other short, and that they were clad in orange and white. (Ex. E, pg. 40, lns. 2-10.)

Seeing the suspects, the Nassau Police Officers proceeded across the street and walked towards Plaintiff and White and noticed that Plaintiff and White became hesitant as they approached them.  (Ex. E, pg. 40, lns. 16-19.) While observing the Plaintiff and White, Officer O'Brien saw White make furtive movements, including bending and throwing something behind a parked car. (Ex. E, pg. 20-25.)

As a result, Officer O'Brien and Throo drew their guns, pointed them at Plaintiff and White, and ordered them to get up against a wall. Plaintiff and White were frisked for weapons

and then handcuffed.  (Ex. E, pg. 41, lns. 3-8.) Officers O'Brien and Throo then announced over their police radios that they had two subjects in custody who were possibly involved in a stabbing and ask whether Hempstead Police had a crime scene where an assault or stabbing had taken place.  (Ex. E, pg. 9-19.)   Officers O'Brien and Throo recovered a 7-inch knife that White threw away and a bloody rag that Plaintiff was holding.  (Ex. E, pg. 113, lns. 17-20.)

*The Show-Up*

Shortly thereafter, Hempstead Police Officer Morris, in response to a call over his police radio for a disturbance at the train station parking lot, arrived at the location where Plaintiff and White were being held by Nassau County Police Officers O'Brien and Throo.  (*See* Police Officer James Morris' deposition transcript is annexed as **Exhibit "F"**, pg. 63, ln. 11-pg. 64, ln. 10.)   Plaintiff testified that Defendant Hempstead Police Officer Holly also came to the location where he and White were being held by Nassau County Police Officers O'Brien and Throo.  (Ex. C, pg. 43, lns. 12-22.)  Police Officer Morris took possession of the bloody rag belonging to Plaintiff.  (Ex. F, pg. 70, lns. 9-13; 71, lns. 19-20.) Officer Morris took custody of the Plaintiff and Officer Holly took custody of White for the purpose of a *show-up* with the victim who was being treated in a nearby ambulance.  (Ex. F, pg. 71, lns. 21-24.)  Officer Morris testified that the Plaintiff was handcuffed for his safety as well as the safety of the public. (Ex. F, pg. 66, lns. 7-13.)  In separate police vehicles, Officer Morris transported Plaintiff and Officer Holly transported White to the ambulance for the *show-up*. (A show up is an in person identification of a potential crime suspect.)

According to Officer Morris, the victim, Dwyer, at the showup, said that "it was not (Plaintiff]".  However, Officer Morris testified that he does not know what question the victim was answering when he allegedly said it was not Plaintiff.  (Ex. F, pg. 150, lns. 19-25.) Officer

Morris also testified that he did not speak with Dwyer, or asked Dwyer to respond to any questions at the show-up. (Ex. F, pg. 143, lns. 14-24.) All Officer Morris did was to present the Plaintiff to the victim, Dwyer. (Ex. F, pg. 143, ln. 25-pg. 144, ln. 3.)

<u>The Victim's Statement</u>

Subsequently, either at the scene or at the hospital, Officer Torres took statements from the victim Dwyer regarding the assault. (*See* Police Officer Gabriel Torres' deposition transcript annexed as **Exhibit "G"**, pg. 21, lns. 2-4; pg. 38, ln. 24-pg. 39, ln. 7.) In the statements, the victim identified the Plaintiff as one of the perpetrators of the assault that culminated in him being stabbed. (*See* Police Department, County of Nassau, N.Y., Supporting Depositions of James Dwyer taken by Officer Torres dated July 15, 2013 annexed as **Exhibit "H"**.)[2]

<u>Plaintiff's 40-Minute Wait</u>
<u>at the Hempstead Police Station</u>

After the *show-up*¸ and because felony cases throughout Nassau County are handled by the Nassau County Police Department, Police Officer Morris transported the Plaintiff to the Hempstead Police Station pending Nassau County Police Department's investigation of the alleged crime. (*See* Affidavit of Lt. Montera). Plaintiff testified that he was in the custody of the Hempstead Police for *forty (40) minutes*. (Ex. C, pg. 83, lns. 9-11.)

Notably, while the Plaintiff was at the Hempstead Police Station awaiting members of the Nassau County Police to interview him, no member of the Hempstead Police Department relieved Plaintiff of his property, fingerprinted him, photographed him, gave him the *Miranda Warnings* or interviewed him. (Ex. C, pg. 81, ln. 3-pg. 82-ln. 14.) In fact, Plaintiff testified,

---

[2] Based on the statements taken by Officer Torres, the Plaintiff filed a motion for leave to amend his pleadings to name Officer Torres as a defendant. (*See* Docket Nos. 44. And 47.) Village Defendants opposed the motion. (*See* Docket Nos. 45 and 46.) The Court granted the motion, but granted Village Defendants' request to take the deposition of the victim, James Dwyer. (*See* Docket Nos. 48 and 49.) On February 26, 2016, all counsels deposed Mr. Dwyer with counsel for all parties, as well as, the Plaintiff in attendance. Mr. Dwyer testified that the statements he gave to Officer Torres regarding the Plaintiff's involvement in the assault were truthful. (*See* James Dwyer deposition transcript, Ex. D, pg. 23, lns. 9-18.)

"All my property.  They're supposed to take everything, if you're arrested. I was using my phone down there. Calling people telling them I'm all right." (Ex. C, pg. 81, ln. 24-pg. 82, ln. 3.) Plaintiff testified that he was picked up from the Hempstead Police Station in less than an hour and transported to the Nassau County Police Department's Third Squad by Nassau County plain clothed Detectives. (Ex. C, pg. 83, lns. 14-25.) Plaintiff testified that the Nassau County Police told him that he was under arrest and placed him in handcuffs at the Hempstead Police Station. (Ex. C, pg. 84, lns. 9-17.)

*Plaintiff's Interrogation, Booking, Charge*
*and Detention at the Nassau County Police Station*

In contrast to Plaintiff's time at the Hempstead Police Station, at the Nassau County's Police Station, the Nassau County Police searched the Plaintiff, fingerprinted him, photographed him, and took his personal property, gave Plaintiff the *Miranda Warnings*.  (Ex. C, pg. 85, ln. 19-pg. 86, ln. 24.).  Plaintiff waived his right to have an attorney present and waived his right to remain silent.  (Ex. C, pg. 86, lns. 7-16.) Thereafter, Nassau County Detective Robert Lashinky took a statement from the Plaintiff.  (*See* Robert Lashinsky's deposition testimony annexed as **Exhibit "I"**, pg. 41, lns. 14-20.) Based *on Plaintiff's statements made to Detective Lashinsky placing himself at the scene of the assault*, Plaintiff was charged by Nassau County Police with two felonies.  (*See* Nassau County Police Dept., Crime Report dated July 15, 2013 annexed as **Exhibit "J"**.)

Thereafter, Nassau County Police Officer O'Brien swore out District Court – Felony Complaints against the Plaintiff for the two felonies.  (*See* District Court- Felony Complaint annexed hereto as **Exhibit "K"**.)  The Felony Complaints were then held pending a Grand Jury review. (*See* Ex. K.) Nassau County Police Officer O'Brien also completed an Arrest Report charging the Plaintiff with both felonies.  (*See* Arrest Report annexed as **Exhibit "L"**.)  The

arrest report also states that he, Officer O'Brien, arrested the Plaintiff.  (*See* Ex. L, Arrest Data section.)  With respect to the arrest of the Plaintiff, Nassau County Officer O'Brien testified, "It's my arrest." (Ex. E, pg. 115. lns. 5-15.)

As a result of Plaintiff's arrest by Nassau County Police Officer O'Brien and Detective Lashinsky, the Plaintiff was kept by and in the custody of the Nassau County Police Department for several days until a no true bill was returned by a Grand Jury.

## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a);  *See D'Arnico v. City of New York*, 132 F.3d 145, 148 (2d Cir. 1998).  Although, in a motion for summary judgment, all facts must be construed in favor of the non-moving party, a party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial."  See Fed. R. Civ. P. 56(e).  Therefore, the "non-moving party may not rely on conclusory allegations or unsubstantiated speculation."  *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

## ARGUMENT

### POINT I

### THE VILLAGE DEFENDANTS DID NOT ARREST THE PLAINTIFF

An arrest or seizure "within the meaning of the Fourth Amendment is whether, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."  *Michigan v Chesternut*, 486 U.S. 567 (1988); *see also Dunaway v New York*, 442 U.S. 200, 204 (1979).

In this case, it is undisputed that the Plaintiff was approached and arrested by Nassau County Police Officers O'Brien and Throo. (Ex. C, pg. 70, ln. 23-pg. 71, ln. 18.) Police Officer O'Brien testified that he and his partner,  Officer Throo, approached the Plaintiff and he placed handcuffs on the Plaintiff's wrist and frisked him for weapons.  (Ex. E, pg. 41, lns. 3-8.)  At that point, the Plaintiff was not free to leave.

Therefore, when Hempstead Police Officers Holly and Morris arrived at the location where the Plaintiff was being held by Nassau County Police Officers O'Brien and Throo, the Plaintiff had already been arrested.  As such, when Officer Morris took custody of the Plaintiff for the purpose of a show-up, it was nothing more than rendering assistance and a mere continuation of the justifiable arrest already made by Nassau County Officers O'Brien and Throo.  These facts are undisputed since Officer O'Brien testified, "it's my arrest."  (Ex. E, pg. 115. lns. 5-15.)

Furthermore, no Village police officer testified that they arrested the Plaintiff.  In fact, Officer Morris testified that, with respect to him, he did not consider the Plaintiff arrested, despite his placement in handcuffs because it is proper police procedure to place suspects in handcuffs for his safety and the safety of the general public. (Ex. F, pg. 66, lns. 7-13.)

In addition, it is undisputed that the Plaintiff did not think he was arrested by the Village Defendants because he expected that his property would have been taken once he was transported to the Hempstead Police Station.  When referring to his time at the Hempstead Police Station, the Plaintiff testified, "They're supposed to take everything, if you're arrested. I was using my phone down there. Calling people telling them I'm all right." (Ex. C, pg. 81, ln. 24-pg. 82, ln. 3.).  It is also undisputed, that none of the Village Defendants booked or charged the

8

Plaintiff with any crime.  In fact, Plaintiff testified that Officer Morris told him that he would be questioned by Nassau County and let go.  (Ex. C, pg. 49, lns. 10-13; pg. 86, lns. 16-18.)

It is clear that Officer Morris' intent was not to detain the Plaintiff, but to give assistance to the Nassau County Police who arrested the Plaintiff by merely maintaining custody of the Plaintiff pending instructions from Nassau County.  *See Michigan v Chesternut*, 486 U.S. 567, 576 (1988) ("the subjective intent of the officers is relevant to an assessment of the Fourth Amendment implications of police conduct only to the extent that that intent has been conveyed to the person confronted").  Officer Morris communicated his intent to Plaintiff, which did not show any personal intention to confine the Plaintiff.  As such, it is obvious that the Village Defendants did not initiate the physical arrest of the Plaintiff and only became involved  in a limited capacity to facilitate the show-up and hold the Plaintiff for investigation purposes at the request of the Nassau County Police Officers who arrested the Plaintiff.

As such, the uncontroverted facts show that the Village Defendant did not arrest the Plaintiff, and is thus, entitled to summary judgment on Plaintiff's claim of false arrest/seizure, as well as, all of the other claims flowing from the arrest.

## POINT II

### PROBABLE CAUSE TO ARREST AND SEARCH THE PLAINTIFF EXISTED.  THEREFORE, THE VILLAGE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FALSE ARREST AND SEARCH AND SEIZURE CLAIM

Under New York law, a plaintiff alleging false arrest must show that the defendant intentionally confined him  without justification and without him consent."  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  A § 1983 claim for false arrest is based on the Fourth Amendment

right of a person to be free from unreasonable search and seizures, which proscribes an arrest in the absence of probable cause.  *See Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995).

As such, it is well settled that the existence of probable cause is a bar and a complete defense to a claim of false arrest under both state law and § 1983.  *See Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994); *Singer v. Fulton County Sheriff*, 63 F.3d 110 (1995) ("There can be no civil rights claim for false arrest where the arresting [police] officer had probable cause.").

"Probable cause exists where a [police] officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *See Dunaway v. New York*, 442 U.S. 200, 208 (1979).  Probable cause may be determined as a matter of law where there is no dispute as to the relevant events and the knowledge of the officers.  *See Weyant*, 101 F.3d at 852.

Here, the Plaintiff's false arrest claim is barred by the existence of probable cause because Nassau County Police Officers O'Brien and Throo had "reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the [Plaintiff had committed a crime]."  *See Dunaway*, 442 U.S. at 208; s*ee also Jocks v Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003); *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994).  Officer O'Brien testified that prior to his arrest of the Plaintiff, a male of Asian descent approached him and reported the assault and stabbing. (*See* Ex. E, pg. 37, ln. 19-pg. 38, ln. 14.)    Included in the eye-witness' verbal report, was a unique description of the Plaintiff and his accomplice. (Ex. E, pg. 40, lns. 2-10.)    An eyewitness' report of a crime is sufficient to give rise to probable cause, in the absence of doubts about the eye-witness' veracity. *See Curley v. Vil. of Suffern*, 268 F.3d 65, 70 (2d Cir 2001) ("When information is received from

a putative victim or an eyewitness, probable cause exists, . . . unless the circumstances raise doubt as to the person's veracity."); *see also Lebowitz v. City of New York*, 606 Fed. Appx. 17, 18 (2d Cir 2015)(stating the same); *Schnitter v. City of Rochester*, 556 Fed. Appx. 5, 8 (2d Cir 2014) (stating the same).

In this case, there was no information to suggest that the Asian male witness was not telling the truth.  In fact, the witness' veracity was proven when his description of the Plaintiff and his accomplice were confirmed when Officer O'Brien saw the Plaintiff and his accomplice across the street appearing in a manner (i.e. one tall and one short, and dressed in white and orange) fitting the witness' description.  The witness' veracity was further bolstered when Officer O'Brien witnessed White throw an object, which turned out to be a 7-inch knife behind a parked car.

Furthermore, the identification of the perpetrator of a crime by a person who claims to be a victim, who also signs a statement identifying the perpetrator, is also sufficient to establish probable cause.  *See Houston v. Nassau County*, 2011 WL 477732 at 6 (E.D.N.Y. 2011) citing *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) ("An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity."); *Kilburn v Vil. of Saranac Lake*, 413 Fed. Appx. 362, 363 (2d Cir. 2011) ("An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity.").

Here, the victim, James Dwyer, identified the Plaintiff as a participant in the fight and gave statements to that effect.  (*See* Supporting Depositions of James Dwyer, Ex. H.)  Mr. Dwyer also executed an affidavit stating that the Plaintiff struck him first and was involved in his assault.  (*See* Affidavit of James Dwyer dated February 12, 2016 annexed as **Exhibit "M"**.)

It is important to note, that in his February 12, 2016 Affidavit, Mr. Dwyer states that he was pressured by the Plaintiff into giving an Affidavit on December 12, 2014 that misrepresented the events of July 15, 2013.  (A copy of the December 12, 2014 Affidavit of James Dwyer is annexed as **Exhibit "N"**.)  Finally, James Dwyer testified that the Plaintiff was in fact involved in the fight that led to him being stabbed.  Mr. Dwyer testified, as follows:

> Q: When the police officer brought Williams to the ambulance, did they ask you any questions of whether or not Williams was involved in the fight?
> A: Yes.
>
> Q: What was your response?
> A: I said -- I said -- the first guy that came was White and I said, yes. Then I told the officer or the ambulance guy who was -- he was in the fight with me.
>
> Q: Who was in the fight with you?
> A: Mr. Williams.
>
> Q: Let me ask you this: With respect to David Williams, did you say to the police, when they brought him, that's not him?
> A: No. I said, wait a minute. I got – I gotta get a better look, and then they brought him back and I said yes.
>
> Q: So you never said, that's not him?
> A: No. I didn't say that's not him. No.
>
> Q: Did you ever say to the police, with respect to Mr. Williams, that he was not involved in the fight?
> A: No.
>
> Q: Did you ever say to the police, with respect to Mr. Williams, that he was trying to alleviate the fight?
> A: What's alleviate? Like get away from it?

Q: No. Did you say that, yes or no?
A: Alleviate? I don't know what alleviate means. That's what I'm trying to tell you.
Q: So would you have used a word that you didn't know what it meant?
A: What does that mean?

Q: I'm asking you if you said it, yes or no?
A: I don't remember, no. But I told the officer that both of them were in the fight with me. That's all -- that's all I remember. Okay?

Q: Because of this fight, were you taken to the hospital?
A: Yes.

(Ex. D, pg. 21, ln. 2 – pg. 22, ln. 20.)

The Plaintiff does not dispute that he fought with Dwyer.  Plaintiff testified, as follows:

Q: What happened then?
A: He hit me.

Q: Mr. Dwyer did?
A: Yes.

Q: Where did he hit you?
A: In my face.

Q: What did you do, after he struck you?
A: **I grabbed him, we tussled**. He threw me
down. My shirt came over my face. When I got back up and I looked, three or four people were on him. They dispersed and **he's bleeding like crazy**.

Q Did you swing back at Mr. Dwyer?
A: **Yes**.

Q: Let's back up here. He punched you?
A: Yes.

Q: What did you do?
A: **I swung back at him**.

Q: Where did you hit him?
A: **I think I hit him in the arm**.

Q: How many times did you strike him?
A: Once.

(Ex. C, pg. 34, lns. 5-25.)

The Plaintiff claims that the victim exonerated him at the scene by stating that he was not in the fight and that he was only trying to break up the fight. This assertion is not supported by the victim's statements. The victim's statements to the Police, which he gave on the day of stabbing, his affidavit, and his sworn deposition testimony all confirm that Plaintiff was involved in the fight that left Mr. Dwyer stabbed and bloodied.

The Plaintiff may argue that the victim executed an Affidavit on December 12, 2014, stating that he was not involved in the fight. However, the victim testified that the Affidavit dated December 12, 2014 prepared by Plaintiff's counsel, was signed by him under pressure and duress. (Ex. D, pg. 26, lns. 3-22; pg. 28, lns. 5-15.) Dwyer testified, "I told you he got me pressured. If I had to say what I had to say to get out of that situation, then I did it." (Ex. D, pg. 35, lns. 2-23.) As such, we submit that the court should disregard the Affidavit of James Dwyer dated December 12, 2014. Mr. Dwyer's testimony that the Plaintiff was involved in the assault did not waiver at his deposition. Even while being bombarded with questions from Plaintiff's counsel and being stared down by the Plaintiff, who just happened to appear that day, the Plaintiff was firm. Notably, Mr. Dwyer's deposition was the only deposition of other witnesses the Plaintiff attended.

There is no genuine issue of fact that the Plaintiff was involved in the fight, and therefore, was justifiably arrested. Therefore, we submit that, any issue arising through the contrary testimony of the Plaintiff and the victim does not preclude summary judgment in favor of the Village Defendants. The Village Defendants did not arrest the Plaintiff, probable cause existed upon which the Plaintiff was justifiably arrested by Nassau County Police, and the Village

14

Defendants merely held the Plaintiff at the Police Station for 40 minutes pending the investigation by Nassau County.

Moreover, at the Nassau County Police Station, after the Plaintiff was read his *Miranda* right to remain silent and to have an attorney present, he waived his rights and provided a statement to Nassau County Detective Lashinsky, which incriminated himself.   (*See* C.P.L. § 710.30 Notice annexed as **Exhibit "O"**.)  It states that,

> [Plaintiff] stated to Detective Lashinsky in sum and substance: I was at the bus stop with Tasha this dude came up to us asking for cigarettes to give you but I will sell you some, that's when Tommy came up and that's when the guy wanted to fight us. Tommy told the guy to follow him across the street. I followed them and the white guy stopped short. **Me and him had some words and we threw some punches**. I skinned my knee. They went across the street, I knew some guys got in but I can't really tell you what happened. Yea cause **I had it on my shoulder when I was punching him or maybe when I dropped it, it got blood on it and then I picked it up**. When I dropped it somebody else could have picked it up.

(*See* C.P.L. § 710.30 Notice annexed as **Exhibit "O"**.) (*Emphasis added*.)

It is clear from the above statement that the Plaintiff was involved in the assault, not as a peacemaker, but as one of the perpetrators of the assault that resulted in the stabbing of Mr. Dwyer.   As such, there was probable cause to arrest the Plaintiff.   Probable cause is a complete defense to a false arrest claim. *See Waldron v. Milana*, 541 Fed. Appx. 5, 7 (2d Cir 2013) ("False arrest and malicious prosecution claims are barred if the officer had probable cause to make the arrest."); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir 2013) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983."); *Stansbury v Wertman*, 721 F.3d 84, 89 (2d Cir 2013) "[P]robable cause is an absolute defense to a false arrest claim.").

Finally, even if the victim, at the show up, had said that the Plaintiff was not in the fight, the Plaintiff himself, admitted at his interrogation that he was in the fight, and then confirmed at his deposition that he was in the fight. Still, the Plaintiff is asking this Court to allow him to present this case to a jury in hopes that he might be awarded money, despite his assault on Mr. Dwyer. Plaintiff's position is preposterous.

Plaintiff's entire Amended Complaint should be dismissed as there are no genuine issues of material fact that probable cause did not exist to arrest Plaintiff for this case to go before a jury.

### POINT III

### THE VILLAGE DEFENDANTS DID NOT MALICIOUSLY PROSECUTE THE PLAINTIFF

To establish a claim for malicious prosecution, under New York Law, a plaintiff must prove (1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause and (4) malice. *See Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983); *Rivas v. Suffolk Cnty.*, 326 F. Supp. 2d 355, 362 (E.D.N.Y. 2004).

Similar to a claim for false arrest, a claim for malicious prosecution is barred by the existence of probable cause. *See Waldron*, 541 Fed. Appx. at 7 ("False arrest and malicious prosecution claims are barred if the officer had probable cause to make the arrest."); *Dickerson v Napolitano*, 604 F.3d 732, 751 (2d Cir 2010) ("Probable cause is a complete defense to any action for false arrest or malicious prosecution in New York."); *Maron v County of Albany*, 166 Fed. Appx. 540, 542 (2d Cir 2006) ("probable cause is an absolute defense to causes of action for false arrest and malicious prosecution").

Therefore, for the reasons stated above, that establishes that probable cause existed to arrest the Plaintiff, the Plaintiff's malicious prosecution claim should be dismissed.

**POINT IV**

**THERE IS NO EVIDENCE TO SUPPORT THE
PLAINTIFF'S CLAIM FOR SUPERVISORY LIABILITY**

Under § 1983, supervisory liability requires personal involvement by the supervisor for § 1983 liability to attach. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir 1995); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) *citing Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987). Here, the Plaintiff's Complaint contains nothing more than conclusory and unsubstantiated allegations of a non-existent supervisory involvement. Plaintiff has not asserted any specific allegations against any Village Defendant supervisor. Based on the evidence discovered in this case, there are no genuine issues of material facts regarding the liability of any law enforcement supervisor from the Village of Hempstead.

Plaintiff's entire Complaint is based on his unsupported allegation of false arrest. Based, on the fact that probable cause existed for his arrest, there was no constitutional violation to give rise to supervisory liability. Alternatively, as discussed in further detail below, the individual Village Defendants are entitled to qualified immunity thereby precluding liability. As such, the Village Defendants are entitled to summary judgment on the Plaintiff's claim for supervisory liability.

**POINT V**

**THERE IS NO EVIDENCE TO SUPPORT THE
PLAINTIFF'S CLAIM FOR MUNICIPAL LIABILITY**

Plaintiff's state law claim against the Village under the theory of *respondeat superior* must be dismissed because a municipality cannot be held liable under § 1983 on a *respondeat superior* theory. *See Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691 (1978). Furthermore, no notice of claim was served upon the Incorporated Village of Hempstead alleging *respondeat superior*. Similarly, the Plaintiff's municipal liability (*Monell*) claim against the Village, is without merit. *See Id.; Linder v. City of New York*, 263 F.Supp.2d 585 (E.D.N.Y. 2003).

To plead a *Monell* claim, a plaintiff must plead and prove (1) an injury to a constitutionally protected right, and (2) that the injury was caused by a policy or custom of the municipality or by a municipal official responsible for establishing final policy.  *See Hartline v. Gallo*, 546 F.3d 95, 103 (2d Cir. 2008).  Applicable to the case at bar, the *Hartline Court* stated that "to prevail against the Village [ ], [Plaintiff] must demonstrate that [he] was subjected to an unconstitutional [arrest] by the [Police Department] pursuant to departmental policy." A municipality can only be held liable if the alleged conduct was undertaken pursuant to a policy statement, ordinance, regulation or decisions officially adopted and promulgated by the municipality.  *Id*.

Plaintiff's Complaint contains nothing more than conclusory allegations that fail to set forth any credible facts to establish a claim for municipal liability.  Plaintiff failed to set forth the policy, practice or custom that led to his arrest.  Furthermore, the evidence discovered in this case does not support a *prima facie* case for municipal liability and raises no genuine issues of fact to defeat summary judgment on this claim.  As set forth at length above, the Village Defendants did not arrest the Plaintiff.  Therefore, there can be no municipal liability against the Village.  The Plaintiff's arrest by Nassau County was preceded by probable cause, but, assuming *arguendo* that it did not, municipal liability cannot be imputed to the Village through the actions of Nassau County.  Notwithstanding the forgoing, the Plaintiff utterly failed to set forth a *prima facie* case for municipal liability, there are no genuine issue of fact to maintain this claim against the Village.  Therefore, the Village is entitled to summary judgment on this claim.

### POINT VI

### THERE IS NO EVIDENCE TO SUPPORT THE PLAINTIFF'S CLAIM OF MALICIOUS ABUSE OF PROCESS

Under New York law, "a malicious  abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act;

(2) with the intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir.2003); *see also Shain v Ellison*, 273 F.3d 56, 68 (2d Cir. 2001); *Cook v Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994).

Plaintiff's malicious abuse of process claim fails because there is no evidence discovered to raise a genuine issue of fact that any of the individual Village Defendants employed legal process to (1) compel or prevent any action from the Plaintiff, (2) with the intention to do harm, and (3) to achieve any objective, other than, at most, Plaintiff's prosecution and conviction for his involvement in the assault on James Dwyer.  The Village Defendants are entitled to summary judgment on Plaintiff's malicious abuse of process claim.

**POINT VII**

**THE INDIVIDUAL VILLAGE DEFENDANTS ARE
ENTITLED TO QUALIFIED IMMUNITY**

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *See Pearson v. Callahan*, 555 U.S. 223 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  Police officers enjoy qualified immunity for discretionary actions when their conduct does not violate clearly established rights or when it is objectively reasonable to believe that their actions do not violate clearly established rights. *See Townes v. New York*, 176 F.3d 138 (2d Cir. 1999).  The question of qualified immunity should be decided by the Court as a matter of law.  *See Stephenson v. Doe*, 332 F.3d 68 (2d Cir. 2003); *see also Finnegan v. Fountain*, 915 F.2d 817 (2d Cir. 1990).

In this case, the Village Defendants are entitled to qualified immunity because (1) the Village Defendants did not arrest the Plaintiff, (2) Plaintiff's arrest by Nassau County Police was

predicated on probable cause, and (3) there was at least *arguable probable cause* to arrest the Plaintiff.  It was objectively reasonable when Officer Morris took custody of the Plaintiff from the Nassau County Police Officers O'Brien and Throo for the purpose of a show-up.  It was also objectively reasonable for Officer Morris to transport the Plaintiff to the Hempstead Police Station pending the felony investigation by Nassau County after the show-up.  There is no question here, that a violent and potentially deadly crime had been committed against James Dwyer and that the Plaintiff partook in the assault against Mr. Dwyer, as such, it was objectively reasonable for the Nassau County Police Officers to stop the Plaintiff and his accomplice upon the report of an eye witness whose veracity was not questionable by any of the circumstances surrounding his report of a stabbing.

It was also objectively reasonable for the Village Defendant Police Officer Torres to take a statement from the victim, Mr. Dwyer, and to transmit that statement to the Nassau County Police Department who was investigating the case. It was also objectively reasonable for Lt. Montera to allow the Nassau County Police to conduct the investigation of the alleged felony assault against Mr. Dwyer and to wait for the Plaintiff to be picked up by Nassau County Detectives.  The Village Defendants' actions did not violate any clearly established rights of the Plaintiff.

Plaintiff will argue that the Village Defendants withheld information from the Nassau County Police Department, to wit, the alleged exculpatory statement made by the victim, Mr. Dwyer, at the scene.  However, that claim is clearly false.  Needless to say, Mr. Dwyer refuted that claim repeatedly.  In addition, Mr. Dwyer confirmed, through his sworn deposition testimony and his sworn Affidavit that the statements he gave to Officer Torres were accurate and that Plaintiff was involved in the assault on his person.

Furthermore, the Plaintiff was charged and confined based on the statements he gave to Nassau County Detective Lashinsky after he waived his right to be free from self-incrimination. (*See* Ex. O.) Notably, Detective Lashinsky made no mention of the victim's statements taken by Officer Torres.  Detective Lashinsky's decision to charge the Plaintiff with two felonies were based, as stated in the documents produced, on statements the Plaintiff made that have been reproduced above under Point II.

Equally unavailing are any testimonies that the Plaintiff will pull from the various deposition transcripts of the law enforcement officers, which are replete with hypotheticals at the expense of the facts.  Plaintiff's hypotheticals are insufficient to defeat summary judgment. "[Plaintiff] may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).  Accordingly, the Village Defendants are entitled to qualified immunity.

## POINT VIII

### PLAINTIFF'S STATE LAW CLAIMS MUST BE DISMISS FOR PLAINTIFF'S FAILURE TO SERVE A NOTICE OF CLAIM WITHIN 90 DAYS AFTER THE STATE LAW CLAIMS AROSE

It is well established that the state notice of claim requirements are applicable to state law claims brought in federal courts. *See Hardy v. New York City Health & Hosp. Corp*., 164 F.3d 789, 793 (2d Cir. 1999) ("We start with the general rule that in a federal court, state notice-of-claim statutes apply to state-law claims."); *see also Maloney v. Cnty. of Nassau*, 623 F. Supp. 2d 277, 291 (E.D.N.Y. 2007).  The notice-of-claim must be served within 90 days after the claim arises.  *See* General Municipal Law § 50-e; *see also Maloney*, 623 F. Supp. 2d at 291 ("Section 50–e requires that a plaintiff file a notice of claim prior to the commencement of an action and serve the notice of claim within 90 days after the claim arises.")

Here, the Plaintiff testified that he was arraigned on July 16, 2013, the day after his arrest by the Nassau County Police Department. (Ex. C, pg. 88, lns. 11-25.)  As such, the Plaintiff's state law claim for false arrest accrued on July 16, 2013 the day of his arraignment.  *See Bailey v. City of New York*, 79 F.Supp.3d 424, 443 (E.D.N.Y. 2015) ("A false arrest claim accrues when an arrestee is bound over by a magistrate or arraigned on charges.") *citing Wallace v. Kato*, 549 U.S. 384, 389 (2007). The Plaintiff was required to serve his Notice of Claim on the Village Defendants on or before Monday, October 14, 2013.  The Village Clerk, keeper of records, conducted a search of the Village's records and found that Plaintiff did not serve a notice of claim.

Similarly, Plaintiff failed to serve a notice of claim on the Village of Hempstead for his malicious prosecution claim, which accrued on July 23, 2013, the date upon which his criminal action was dismissed. (*See* Certificate of Disposition Grand Jury Dismissal dated July 25, 2013 annexed as **Exhibit "P"**.) *See Campo v. Wolosin*, 211 A.D.2d 660 (2d Dept 1995) ("A cause of action to recover damages for malicious prosecution accrued when the criminal proceeding terminated favorably to the plaintiff."); *see also Boose v. City of Rochester*, 71 A.D.2d 59, 65 (4th Dept 1979) ("A cause of action for malicious prosecution accrues when the proceeding terminates favorably to the plaintiff.").

As such, the Plaintiff was required to serve a notice of claim upon the Village of Hempstead on or before Monday, October 21, 2013. The Village Clerk, keeper of records, conducted a search of the Village's records and found that Plaintiff did not serve a Notice of Claim.  To the extent that the Plaintiff is claiming false imprisonment, his imprisonment ended and the claim accrued on July 23, 2013. *See Roche v. Vil. of Tarrytown*, 309 A.D.2d 842, 843 (2d

Dept 2003).  As such, the Plaintiff was required to serve a notice of claim upon the Village of Hempstead on or before Monday, October 21, 2013. No such notice was served.

Plaintiff's claims for *respondeat superior*, and negligent hiring, training, supervision and retention are also barred by the Plaintiff's failure to serve a notice of claim within 90 days, which is on or before Monday, October 14, 2013. *See Jean-Laurent v. Bowman*, 2014 WL 4662221 at 14 (E.D.N.Y. 2014) ("As a general rule, a tort claim accrues as soon as the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint."); *see also IDT Corp. v Morgan Stanley Dean Witter & Co.*, 12 NY3d 132, 140 (2009) (stating the same).

Although the Plaintiff stated that he served a notice of claim upon the Village of Hempstead in his Amended Complaint, he provided no date upon which service was made. (*See* Comp. ¶ 14.)  This taken together with the fact that the Village Clerk is unable to locate a Notice of Claim bearing the name of the Plaintiff, and the fact that a request to Plaintiff's counsel seeking a copy of said served notice of claim only returned the notice of claim allegedly served upon Nassau County, it is fair to presume that the Plaintiff did not serve a Notice of Claim upon the Village of Hempstead. Therefore, all of Plaintiff's state law claims must be dismissed for his failure to serve a notice of claim within 90 days after the claims arose.  *See Caceres v. Port Auth. of New York and New Jersey*, 631 F.3d 620, 625 (2d Cir. 2011) (failure to file notice of claim creates non-waivable jurisdictional issue warranting dismissal); *see also DeCarolis v. Town of Vienna*, 322 Fed.Appx 25, 26 (2d Cir. 2009) ("holding plaintiffs' state law claims barred for failure to serve notice of claim); *Hardy v. New York City Health & Hosp. Corp*., 164 F.3d 789, 794 (2d Cir. 1999) (same).

Service of a notice of claim upon the County of Nassau does not impute actual knowledge of Plaintiff's claims upon the Village of Hempstead.  *See Ragin v. City of New York*,

23

222 A.D.2d 678, 678-79, 636 N.Y.S.2d 83, 84 (2nd Dept. 1995) ("Nor is there merit to the petitioner's argument that actual knowledge of his false arrest claim may be imputed to the City of New York merely because the petitioner's attorney wrote to the Queens County District Attorney, shortly after the incident occurred"); *see also Vitali v. City of New York*, 613 N.Y.S.2d 270, 271 (2nd Dept. 1994) ("The mere fact that New York City Fire Department and New York Emergency Medical Service personnel were at the scene of the accident is insufficient to impute the requisite knowledge to the City").

Accordingly, the Plaintiff's assertion that the Court has subject matter jurisdiction over his state law claims is wrong.   The Court should grant the Village Defendants summary judgment on Plaintiff's state law claims thereby dismissing them in their entirety.

## POINT IX

### THE COURT DOES NOT HAVE AUTHORITY TO GRANT PLAINTIFF LEAVE TO FILE A LATE NOTICE OF CLAIM

If Plaintiff moves to file a late notice of claim pursuant to General Municipal Law § 50-e (5), the Court is obligated to deny the request because the Plaintiff's one (1) hundred and ninety (90) days within which to commence an action on his state law claims has expired.  *See* GML § 50-e(5) ("The extension shall not exceed the time limited for the commencement  of  an action by the claimant against the public corporation."); *see also Pierson v. City of New York*, 56 N.Y.2d 950 (1982) ("where time for filing notice of claim against city without court approval had expired and no application for an extension was made prior to expiration of the statute of limitations, court lacked power to authorize late filing of the notice."); *Pilitz v. Inc. Vill. of Rockville Ctr.*, 634 F. Supp. 2d 317, 318 (E.D.N.Y. 2009) ("this court lacks jurisdiction to grant a request to file a late notice of claim if more than one year and ninety days has passed since

accrual of the claim"); *Humphrey v. Cnty. of Nassau*, 2009 WL 875534, at \*21 (E.D.N.Y. 2009) ("the Court lacks jurisdiction, pursuant to Section 50–e(7), to deem plaintiff's state law claims against the [Village] defendant[s] timely filed or to grant an extension of time to file"); *Maier v. New York City Police Dep't*, 2009 WL 2915211 at 4 (E.D.N.Y. 2009) ("Even if the application for leave to file late notice were timely, it is not within the power of this Court to grant such an application."   Therefore, any application by Plaintiff to file a late notice-of-claim as to his state law claims must be denied.

## <u>CONCLUSION</u>

Based on the above arguments the Defendants are entitled to summary judgment on all of Plaintiff's claims thereby dismissing the Plaintiff's entire Amended Complaint and dismissing the Co-Defendant County of Nassau's Cross-Claims against the Village Defendants.

Dated: April 26, 2016
      Uniondale, New York

          Respectfully Submitted,

          **HARRIS BEACH PLLC**
          *Attorneys for Village Defendants*

          _____s/ William J. Garry_____
          William J. Garry, Esq.
          Kadion D. Henry, Esq.