UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————

№ 14-CV-5959 (JFB)(AKT)

———————

DAVID WILLIAMS,

Plaintiff,

VERSUS

COUNTY OF NASSAU, ET AL.,

Defendants.

———————

**MEMORANDUM AND ORDER**
November 30, 2016

———————

JOSEPH F. BIANCO, District Judge:

Plaintiff David Williams ("plaintiff" or "Williams") brings this action alleging false arrest and unlawful search and seizure, malicious prosecution, supervisor liability, *Monell* liability, and malicious abuse of process under 42 U.S.C. § 1983; and claims for false arrest, malicious prosecution, *repondeat superior* liability, and negligent hiring, training, supervision, and retention under New York state law against defendants the Incorporated Village of Hempstead (the "Village"), Village of Hempstead Lieutenant Vincent Montera ("Lieutenant Montera"), Village of Hempstead Police Officer Michael Holly ("Officer Holly"), Village of Hempstead Police Officer James Morris ("Officer Morris"), and Village of Hempstead Police Officer Gabriel Torres ("Officer Torres") (collectively, the "Village Defendants"), as well as against defendant County of Nassau.[1]

The Village Defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, the motion is denied.

---

[1] In his opposition to the Village Defendants' motion for summary judgment, plaintiff withdrew all of his New York state law claims and his Section 1983 claims for malicious abuse of process and *Monell* liability. (Pl.'s Opp'n to Village Defs.' Mot. for Summ. J. ("Pl.'s Opp'n"), ECF No. 59, at 3.) However, in a conclusory reference on page 11 of his brief, plaintiff requests that the Court deny summary judgment to the Village Defendants on his *Monell* claim. Pl.'s Opp'n at 11. That reference appears to be a typographical error, and because plaintiff does not affirmatively contest the Village Defendants' arguments as to this cause of action, the Court deems it to be abandoned. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 194-95 (2d Cir. 2014). Accordingly, the Court will not address plaintiff's New York state law claims or his Section 1983 claims for malicious abuse of process and *Monell* liability.

1

I. BACKGROUND

A. Facts

The following facts are taken from the parties' depositions, affidavits, and exhibits, and the parties' respective Rule 56.1 statements of fact ("Village Defs.' 56.1," ECF No. 58-24, and "Pl.'s 56.1" and "Pl.'s 56.1 Counterstatement," ECF No. 59-13). Unless otherwise noted, the facts are undisputed. Upon consideration of the motion for summary judgment, the Court shall construe the facts in the light most favorable to plaintiff as the nonmoving party, and will resolve all factual ambiguities in his favor. *See Capobianco v. New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2001).

On July 15, 2013, plaintiff was involved in an altercation with James Dwyer. (Village Defs.' 56.1 ¶¶ 2-3, 10; Pl.'s 56.1 ¶¶ 2-3, 10.)[2] Thomas White ("White"), an acquaintance of plaintiff's, and two other men intervened in that dispute. (Village Defs.' 56.1 ¶ 12; Pl.'s 56.1 ¶ 12.)[3] When the entire group dispersed, Dwyer had sustained one or more stab wounds to his neck and was "bleeding like crazy." (Village Defs.' 56.1 ¶ 13; Pl.'s 56.1 ¶ 13.) Plaintiff and White then went to a liquor store and subsequently attempted to catch a bus, but Nassau County Police Officers Michael O'Brien ("Officer O'Brien") and Michael Throo ("Officer Throo") apprehended plaintiff and White before they could do so. (Village Defs.' 56.1 ¶¶ 14-15; Pl.'s 56.1 ¶¶ 14-15.)

Officer O'Brien testified that an "unknown male," whom he believed to be of Asian descent, told him and Officer Throo that two black men—one who was shorter and wearing a white tank top with dark shorts, and another who was taller and wearing an orange and white shirt with white shorts—were involved in "a stabbing that just happened around the corner." (Pl.'s 56.1 Counterstatement ¶¶ 1-2; Village Defs.' 56.1 ¶¶ 16, 18.) Officer O'Brien testified that this description was "unique," and that he saw both plaintiff and White across the street from where he and Officer Throo were standing wearing the same clothing that the unknown man had described. (Pl.'s 56.1 Counterstatement ¶ 2; Village Defs.' 56.1 ¶¶ 17-18.) Officer O'Brien testified that, as he and Officer Throo began to cross the street, plaintiff and White became "hesitant," and White made "furtive movements" and threw "something on the ground behind a parked car." (Village Defs.' 56.1 ¶¶ 19-20.) Officers O'Brien and Throo then ordered plaintiff and White to stand against a wall, frisked them for weapons, and handcuffed them. (Village Defs.' 56.1 ¶ 21; Pl.'s 56.1 ¶ 21.)[4] Officers O'Brien and Throo recovered a seven-inch knife that White discarded, as well as a bloody towel that plaintiff was

---

[2] Village Defendants characterize this incident as a fight between plaintiff and Dwyer that plaintiff initiated (Village Defs.' 56.1 ¶¶ 3, 8-11; *see also* Village Defs.' Mem. in Supp. of Summ. J. ("Village Defs.' Mem."), ECF No. 58-23, at 2), whereas plaintiff claims that he tried to stop Dwyer from starting a fight with Thomas White, thereby causing Dwyer to punch him in the face and throw him to the ground (Pl.'s 56.1 ¶ 3). Nevertheless, both parties agree that Dwyer and plaintiff "tussled." (Village Defs.' 56.1 ¶ 10; Pl.'s 56.1 ¶ 10.)

[3] Village Defendants claim that, while plaintiff and Dwyer were fighting, White and two other men "joined in the fight and beat and stabbed Dwyer" (Village Defs.' 56.1 ¶ 12), whereas plaintiff claims that Dwyer first threw plaintiff to the ground and pulled his shirt over his head before White and the other men attacked Dwyer "eight or nine feet away" from plaintiff (Pl.'s 56.1 ¶ 12).

[4] Officer O'Brien also testified that he and Officer Throo drew their weapons and pointed them at plaintiff and White (Village Defs.' 56.1 ¶ 21), but plaintiff disputes that this happened (Pl.'s 56.1 ¶ 21).

holding. (Village Defs.' 56.1 ¶ 23; Pl.'s 56.1 ¶ 23.)

Shortly thereafter, Hempstead Police Officer Morris responded to a call over his police radio regarding a disturbance and arrived at the location where Officers O'Brien and Throo were holding plaintiff and White. (Village Defs.' 56.1 ¶ 24; Pl.'s 56.1 ¶ 24.) Hempstead Police Officer Holly also came to this location. (Village Defs.' 56.1 ¶ 25; Pl.'s 56.1 ¶ 25.) Officer Morris took possession of the bloody towel recovered by Officers O'Brien and Throo, handcuffed plaintiff, and placed him into custody, and Officer Holly also took White into custody. (Village Defs.' 56.1 ¶¶ 26-27; Pl.'s 56.1 ¶¶ 26-27; Pl.'s 56.1 Counterstatement ¶ 6.) In separate police vehicles, Officer Morris transported plaintiff and Officer Holly transported White to an ambulance, where Dwyer was waiting for a "show-up."[5] (Village Defs.' 56.1 ¶ 28; Pl.'s 56.1 ¶ 28; Pl.'s 56.1 Counterstatement ¶ 7.) Officer Morris presented plaintiff to Dwyer at the show-up, and Hempstead Officer Torres prepared a statement indicating that Dwyer had identified plaintiff as one of his assailants. (Village Defs.' 56.1 ¶¶ 31-33; Pl.'s 56.1 ¶¶ 31-33.) Plaintiff contends that Officer Torres wrote the statement himself and that Dwyer simply signed it, and he alleges that, in fact, Dwyer exculpated plaintiff during this show-up, but that this exculpation was not included in the statement. (Pl.'s 56.1 ¶ 32; Pl.'s 56.1 Counterstatement ¶¶ 8, 12-13.) In addition, plaintiff asserts that Hempstead Police Lieutenant Montera was present at the show-up. (Pl.'s 56.1 Counterstatement ¶ 9.)

After the show-up, Officer Morris transported plaintiff to the Hempstead Police Department, and plaintiff testified that he stayed there for "probably about thirty to forty minutes." (Pl.'s Dep. Tr., ECF No. 58-4, at 50; *see also id.* at 83 (stating he was at the police department for forty minutes); Village Defs.' 56.1 ¶¶ 34-35; Pl.'s 56.1 ¶¶ 34-35.) While at the Hempstead Police Department, plaintiff did not receive *Miranda* warnings, and no one interviewed, fingerprinted, or photographed him, or relieved him of his property. (Village Defs.' 56.1 ¶¶ 36-37; Pl.'s 56.1 ¶¶ 36-37.) Nassau County detectives then transported plaintiff from the Hempstead Police Station to the Nassau County Police Department's Third Squad. (Village Defs.' 56.1 ¶ 39; Pl.'s 56.1 ¶ 39.) Before leaving the Hempstead Police Station, Nassau County police told plaintiff that he was under arrest and placed him in handcuffs. (Village Defs.' 56.1 ¶ 40; Pl.'s 56.1 ¶ 40.) After arriving at the Third Squad, Nassau County police searched, fingerprinted, and photographed plaintiff, took his personal property, and gave him *Miranda* warnings. (Village Defs.' 56.1 ¶ 41; Pl.'s 56.1 ¶ 41.) Plaintiff testified that he gave a statement (Pl.'s Dep. Tr. at 86), and Nassau County Detective Robert Lashinsky also testified that plaintiff made a statement to him (Village Defs.' 56.1 ¶ 44; Lashinsky Dep. Tr., ECF No. 58-10, at 41); however, plaintiff disputes whether Lashinsky was the individual who took a statement from plaintiff (Pl.'s 56.1 ¶ 43).

By sworn felony complaint dated July 15, 2013, Nassau County charged plaintiff with felony assault in the second degree and criminal possession of a weapon in the third degree. (Village Defs.' 56.1 ¶ 45; Pl.'s 56.1 ¶ 45.) Nassau County held the complaint for the grand jury, which eventually returned a no true bill. (Village Defs.' 56.1 ¶¶ 46, 50;

---

[5] A "show-up" is an identification procedure where police present a suspect to a witness to determine whether the suspect committed the crime under investigation. *See, e.g.*, *Casillas v. Murray*, 662 F. Supp. 2d 300, 313 (W.D.N.Y. 2009).

Pl.'s 56.1 ¶ 46; Pl.'s 56.1 Counterstatement ¶ 16.) Nassau County detained plaintiff for approximately one week until the grand jury returned the no true bill. (Village Defs.' 56.1 ¶ 50; Pl.'s 56.1 Counterstatement ¶¶ 16-17.) Plaintiff claims that the Village Defendants' failure to inform Nassau County that Dwyer had exculpated plaintiff at the show-up resulted in this detention. (Pl.'s 56.1 Counterstatement ¶¶ 14-17.)

B. Procedural History

Plaintiff commenced this action on October 10, 2014. The Village Defendants moved for summary judgment on April 26, 2016. Plaintiff filed opposition papers on May 26, 2016, and the Village Defendants filed their reply on June 9, 2016. The Court held oral argument on July 6, 2016 and has carefully considered the parties' submissions.

II. STANDARD OF REVIEW

The standard for summary judgment is well-settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). The moving party bears the burden of showing that he is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). Rule 56(c)(1) provides that a

> party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (alteration and emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties alone will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48 (emphasis in original). Thus, the nonmoving

4

party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

## III. Discussion

The Village Defendants move for summary judgment on all of plaintiff's remaining claims. Specifically, the Village Defendants argue the following: (1) they are entitled to summary judgment on plaintiff's claim of false arrest/search and seizure because they did not in fact arrest plaintiff; (2) probable cause existed to arrest plaintiff, and thus, they are entitled to summary judgment on the false arrest/search and seizure and malicious prosecution claims; (3) there is no evidence indicating that Lieutenant Montera was personally involved in the challenged conduct, and thus he cannot be subject to supervisory liability; and (4) the individual Village Defendants are entitled to qualified immunity. For the reasons stated below, the Village Defendants' motion is denied in its entirety.

A. False Arrest/Search and Seizure and Malicious Prosecution

The Village Defendants move for summary judgment on plaintiff's false arrest and search and seizure claim, arguing that (1) they did not in fact arrest plaintiff; and (2) in any case, there was probable cause to arrest plaintiff. The Village Defendants also move for summary judgment on the malicious prosecution claim, arguing that because probable cause existed to arrest plaintiff, his malicious prosecution claim must similarly be dismissed. As discussed below, genuine disputes of material fact preclude summary judgment on the false arrest and search and seizure claim, as well as on the malicious prosecution claim.

1. Legal Standard

To prevail on a claim under section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 816 (1985)). Thus, "[c]laims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (citing *Weyant*, 101 F.3d at 852 (false arrest); *Conway v. Vill. of Mount Kisco*, 750 F.2d 205, 214 (2d Cir. 1984) (malicious prosecution)).

The elements of a false arrest claim under New York law are: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Weyant*, 101 F.3d at 853. "Furthermore, when an arrest is made without a warrant, the officer has acted outside the scope of the legal process and therefore a rebuttable presumption arises that

5

such an arrest is unlawful. The defendant has the burden of raising and proving the affirmative defense of probable cause." *Rodriguez v. City of New York*, 563 N.Y.S.2d 1004, 1005 (N.Y. Sup. Ct. 1990) (citing *Broughton v. State*, 37 N.Y.2d 451, 458 (1975)). Probable cause is "a complete defense to a cause of action for false arrest." *Feinberg v. Saks & Co.*, 56 N.Y.2d 206, 210 (1982). "The same holds true for [a] false imprisonment claim[ ] because, under New York law, the claim is identical to a false arrest claim and the federal claim looks to the elements of the state claim." *Kilburn v. Vill. of Saranac Lake,* 413 Fed. A'ppx 362, 363 (2d Cir. 2011) (citations omitted).

The Second Circuit has established that "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (internal citation and quotation marks omitted). In general, probable cause is established where "the [arresting] officer has 'knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.'" *Finigan v. Marshall*, 574 F.3d 57, 62 (2d Cir. 2009) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)); *see also Weyant*, 101 F.3d at 852 (citing *Dunaway v. New York*, 442 U.S. 200, 208 n.9 (1979) (additional citations omitted)). Further, "the validity of an arrest does not depend upon an ultimate finding of guilt or innocence." *Haussman v. Fergus*, 894 F. Supp. 142, 147 (S.D.N.Y. 1995) (citing *Pierson v. Ray*, 386 U.S. 547, 555 (1967)). "Rather, the soundness of the arrest hinges on the existence of probable cause at the time the arrest was made." *Id.* at 147. A determination of probable cause is based upon the "totality of the circumstances, and where law enforcement authorities are cooperating in an investigation . . ., the knowledge of one is presumed shared by all." *Calamia v. City of New York*, 879 F.2d 1025, 1032 (2d Cir. 1989) (internal citations and quotation marks omitted); *see also Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citing *Illinois v. Gates*, 462 U.S. 213, 230 (1983)). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers, or may require a trial if the facts are in dispute." *Weyant*, 101 F.3d at 852 (citations omitted).

To succeed on a malicious prosecution claim under Section 1983, a plaintiff must show that (1) the defendant commenced or continued a criminal proceeding against him; (2) the proceeding was terminated in the plaintiff's favor; (3) there was no probable cause for the proceeding; and (4) the proceeding was instituted with malice. *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009); *Drummond v. Castro*, 522 F. Supp.2d 667, 677-78 (S.D.N.Y. 2007). Malicious prosecution claims also require that there "'be a seizure or other 'perversion of proper legal procedures' implicating the claimant's personal liberty and privacy interests under the Fourth Amendment.'" *Conte v. Cnty. of Nassau*, 06-CV-4746 (JFB)(ETB), 2008 WL 905879, at *11 (E.D.N.Y. Mar. 31, 2008) (quoting *Washington v. Cnty. of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004)). "Unreasonable seizure may be shown if a person is taken into custody, imprisoned, or physically detained." *Jean v. City of New York*, 08-CV-00157 (RER), 2009 WL 3459469, at *9 (E.D.N.Y. Oct. 22, 2009). As with a false arrest claim, the "existence of probable cause is a complete defense to a claim of malicious prosecution in New York," *Manganiello v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2010) (alterations,

6

citations, and quotation marks omitted), "unless some intervening fact exonerating plaintiff has become known to defendants between the time of detention and the time of prosecution," *Feinberg*, 56 N.Y.2d at 210.

The Court also notes, and discusses more fully *infra*, that an arresting officer is entitled to qualified immunity on a claim of arrest without probable cause and of malicious prosecution if either: (1) it was objectively reasonable for the officer to believe that probable cause existed; or (2) officers of reasonable competence could disagree on whether the probable cause test was met. *See O'Neill v. Town of Babylon*, 986 F.2d 646, 649-50 (2d Cir. 1993); *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991).

2. Analysis

a. Arrest

The Village Defendants assert that they are entitled to summary judgment on plaintiff's false arrest and search and seizure claim because Nassau County Officers O'Brien and Throo had already arrested plaintiff by the time that Village Defendant Officers Holly and Morris arrived at the scene, and thus "when Officer Morris took custody of the Plaintiff for the purpose of a show-up, it was nothing more than rendering assistance and a mere continuation of the justifiable arrest already made by Nassau County Officers O'Brien and Throo." Village Defs.' Mem. at 8. However, the Village Defendants have not offered any authority, either in their briefs or at oral argument, that supports this "continuation theory." On the contrary, the elements for a false arrest claim under New York make clear that a defendant is liable if he intended to confine the plaintiff, the plaintiff was conscious of the confinement and did not consent to it, and the confinement was not privileged. *Weyant*, 101 F.3d at 853.

"Continuing" or "assisting" confinement initiated by anothr party is no defense to a false arrest claim if the alleged facts pertaining to a particular defendant satisfy these criteria. So long as a plaintiff establishes the "personal involvement of defendants in alleged constitutional deprivations," he can sustain a Section 1983 claim against them. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). Here, plaintiff has adduced sufficient facts—including the transportation of plaintiff to the show-up (which allegedly yielded exculpatory information) and his detention at the Hempstead Police Station—to permit a rational juror to find that the Village Defendants are culpable for the challenged conduct. *See, e.g.*, *Crockett v. City of N.Y.*, No. 11-CV-4378 PKC, 2015 WL 5719737, at *6 (E.D.N.Y. Sept. 29, 2015) ("[T]o the extent that Other Defendant–Officers assisted in handcuffing [plaintiff] and transporting him to the precinct for arrest processing, they could still be held liable for false arrest, if there was no justification for further restraining [plaintiff] and taking him into custody.").

Although the Village Defendants admit that Officer Morris took plaintiff "into custody," they argue that "no Village police officer testified that they arrested" plaintiff, and that "Officer Morris testified that, with respect to him, he did not consider the Plaintiff arrested, despite his placement in handcuffs because it is proper police procedure to place suspects in handcuffs for his safety and the safety of the general public." Village Defs.' Mem. at 8. In addition, they argue that "it is undisputed that the Plaintiff did not think he was arrested by the Village Defendants" because the Village Defendants did not seize his property or charge him with a crime. *Id*. at 8-9.

However, the essence of a false arrest or unlawful seizure claim under the Fourth and Fourteenth Amendments is that "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988). Factors suggestive of an arrest or seizure include

> the threatening presence of several officers; the display of a weapon; physical touching of the person by the officer; language or tone indicating that compliance with the officer was compulsory; prolonged retention of a person's personal effects . . .; and a request by the officer to accompany him to the police station or a police room.

*United States v. Lee*, 916 F.2d 814, 819 (2d Cir. 1990). Thus, courts have held that handcuffing an individual, placing him in a police car, and transporting him to another location can constitute unlawful arrest and seizure absent probable cause. *See, e.g.*, *People v. Battaglia,* 56 N.Y.2d 558 (1982), *rev'g on dissent below* 82 A.D.2d 389, 395-97 (4th Dep't 1981) (finding it was illegal, absent probable cause, to handcuff defendant and place him in police vehicle); *People v. Henley,* 53 N.Y.2d 403, 407 (1981) (without probable cause, it was illegal for police to handcuff defendant and transport him to a crime scene). Even a brief detention that began as an investigatory stop may become a *de facto* arrest based on, *inter alia*, the duration of the stop and whether or not the police used handcuffs. *See United States v. Perea*, 986 F.2d 633, 644-45 (2d Cir. 1993) (discussing factors that might transform a *Terry* stop into a *de facto* arrest).

Construing the evidence most favorable to plaintiff, a rational juror could find that (1) the handcuffing of plaintiff; (2) his transportation to a show-up orchestrated by the Village Defendants; and (3) his subsequent detention at the Hempstead Police Department all evince purposeful confinement of plaintiff by the Village Defendants, and that a reasonable person in plaintiff's position would have believed that he lacked the freedom to leave. Accordingly, material issues of fact preclude granting the Village Defendants summary judgment on this prong of plaintiff's false arrest and search and seizure claim.

b. Probable Cause

Although the Village Defendants argue that there was probable cause to arrest plaintiff and that his false arrest and malicious prosecution claims must accordingly fail, if plaintiff's version of the facts is accepted as true and all reasonable inferences are drawn in his favor, a rational juror could conclude that it was not objectively reasonable to believe probable cause existed to arrest plaintiff.

The Village Defendants assert that probable cause existed to arrest plaintiff because (1) an eyewitness told Officers O'Brien and Throo about an assault and provided a unique description of the perpetrators that matched the clothing worn by plaintiff and White; (2) Dwyer identified plaintiff as his assailant in a signed statement; and (3) plaintiff admitted to the Nassau County Police during an interrogation that he was involved in the attack on Dwyer.

However, plaintiff argues that, although Officer O'Brien testified that an unidentified male of possible Asian descent reported the stabbing and identified the assailants, there is no mention of this witness or his statement in Nassau County's arrest paperwork, and the arrest report's section indicating how

plaintiff was identified was left blank. (*See* ECF 59-4 at 16-17.) Further, the witness is not mentioned in Nassau County's "Arrest Narrative," and there is no discussion of a witness in the felony complaint's explanation of the evidentiary basis for the charges against plaintiff. (*Id*. at 18-21.) In addition, plaintiff points to testimony by Detective Lashinsky that no one, including Officers O'Brien and Throo, told Lashinsky about a reporting eyewitness. (Lashinsky Dep. Tr. at 41.) Moreover, plaintiff asserts that Dwyer told Officer Morris during the show-up that plaintiff was not responsible for the assault under investigation (Pl.'s 56.1 Counterstatement ¶¶ 8, 12-13; Pl.'s Dep. Tr. at 86), and Dwyer submitted a sworn affidavit stating that he "told the police officer that the man he showed me, who I now know to be David Williams, was not the culprit. I said, 'That's not him. He had nothing to do with it. He was trying to alleviate this'" (Aff. of James Dwyer, ECF No. 59-6, ¶ 9).

Although the Village Defendants note that Dwyer subsequently testified that plaintiff pressured him to sign that affidavit and that plaintiff did in fact attack him (Village Defs.' Mem. at 13-14), the existence of such a material dispute in the facts precludes summary judgment at this stage of the litigation, *see Torino v. Rieppel*, No. 07-CV-1929 (JFB) (ETB), 2009 WL 3259429, at *6 (E.D.N.Y. Oct. 8, 2009) ("Where, as here, the issue of probable cause is 'factual in nature,' it must be presented to a jury." (quoting *Moore v. Comesanas*, 32 F.3d 670, 673 (2d Cir. 1994))). Assessing the credibility of witnesses and resolving inconsistent testimony are the province of the jury, and this Court cannot as a matter of law discredit Dwyer's affidavit. *See Crews v. Cty. of Nassau*, 996 F. Supp. 2d 186, 202 (E.D.N.Y. 2014). Finally, plaintiff's later statement to the Nassau County Police that he was involved in the assault does not create retroactive probable cause sufficient to justify his arrest and search and seizure. *See Vazquez-Mentado v. Buitron*, No. 5:12-CV-0797 LEK/ATB, 2013 WL 2318636, at *6 (N.D.N.Y. May 28, 2013) ("One of the purposes of probable cause and warrant requirements and the extensive jurisprudence on the issues is to ensure that *post facto* knowledge or information is not used to justify arrest and detention.") (collecting cases).

For the same reasons, this Court cannot grant the Village Defendants' summary judgment on plaintiff's claim for malicious prosecution. Based on the foregoing evidence, a reasonable jury could conclude that the Village Defendants lacked probable cause to charge and continue to detain plaintiff. At a minimum, Officer Morris's testimony that Dwyer told him that plaintiff was "not the guy" and was "trying to alleviate the situation" (Morris Dep. Tr., ECF No. 59-5, at 86-87) creates an issue of material fact as to whether probable cause supported the commencement and continuation of plaintiff's prosecution independent of the underlying arrest, *see Feinberg*, 56 N.Y.2d at 210; *Weiner v. McKeefery*, 90 F. Supp. 3d 17, 35 (E.D.N.Y. 2015). Although the Village Defendants do not argue that they cannot be liable for malicious prosecution because Nassau County, and not the Village of Hempstead, charged plaintiff, the Court notes that arresting officers may be held liable when they "create[d] false information likely to influence a jury's decision and forwarde[d] that information to prosecutors," *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997), or otherwise "played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act," *Frederique v. Cty. of Nassau*, 168 F. Supp. 3d 455, 477 (E.D.N.Y. 2016). Thus, if a jury found that the Village

Defendants failed to provide Dwyer's exculpatory statement to Nassau County and knowingly tried to influence the charging decision, a rational jury could find liability for malicious prosecution. *See Feinberg*, 56 N.Y.2d at 210; *Weiner*, 90 F. Supp. 3d at 35.

Accordingly, the Village Defendants' motion for summary judgment, on the basis that probable cause existed for the arrest and prosecution as a matter of law, is denied.

B. Supervisory Liability

The Village Defendants also move for summary judgment on plaintiff's claim for supervisory liability, arguing that plaintiff has failed to assert any specific allegations against Lieutenant Montera, the Village Defendant supervisor, and that there are no underlying constitutional violations. Plaintiff argues that the Village Defendants' motion should be denied because Lieutenant Montera directly participated in violating plaintiff's constitutional rights. Because disputed issues of material fact exist as to Lieutenant Montera's involvement, the Village Defendants' motion for summary judgment on plaintiff's supervisory liability claim is denied.

1. Legal Standard

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright*, 21 F.3d at 501 (citation and quotation marks omitted). In other words, "supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Supervisory liability can be shown in one or more of the following ways:

(1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring.

*Id*. at 145.

2. Analysis

As discussed *supra*, material issues of fact preclude summary judgment on plaintiff's claims for false arrest/search and seizure and malicious prosecution, and thus the underlying constitutional causes of action remain live. Therefore, the request for dismissal of supervisory liability on that ground is denied. Moreover, with respect to the issue of personal involvement, plaintiff has also pointed to testimony by Officer Morris that Lieutenant Montera was present at the show-up and aware of the fact that Dwyer exculpated plaintiff (Morris Dep. Tr. at 85-87) and that, despite this knowledge, Lieutenant Montera ordered Officer Morris to transport plaintiff to and detain him at the Hempstead Police Department (*id.* at 110-11). Thus, because plaintiff has put forth evidence regarding Lieutenant Montera's alleged personal involvement in the failure to provide exculpatory information, he has created an "issue of fact as to [Lieutenant Montera's] direct participation in the alleged constitutional deprivation or, at a minimum, as to whether he was grossly negligent in supervising subordinates engaged in such acts." *Blake v. Race*, 487 F. Supp. 2d 187, 209 n.15 (E.D.N.Y. 2007). Accordingly, the

Village Defendants' motion for summary judgment as to supervisory liability is denied.

C. Qualified Immunity

Finally, the individual Village Defendants argue that they are entitled to qualified immunity because (1) the Village Defendants did not arrest plaintiff; (2) plaintiff's arrest by the Nassau County Police was predicated on probable cause; and (3) there was at least arguable probable cause to arrest plaintiff. Because, as set forth above, there are multiple disputed issues of fact, the Court concludes that qualified immunity at this stage is unwarranted.

1. Legal Standard

According to the Second Circuit, government actors may be shielded from liability for civil damages if their "conduct did not violate plaintiff's clearly established rights or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003); *see also Fielding v. Tollaksen*, 257 Fed. App'x 400, 401 (2d Cir. 2007) (explaining that government officers "are protected by qualified immunity if their actions do not violate clearly established law, or it was objectively reasonable for them to believe that their actions did not violate the law"). "A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . The unlawfulness must be apparent." *Connell v. Signoracci*, 153 F.3d 74, 80 (2d Cir. 1998) (internal quotation marks and brackets omitted). In addition, the Second Circuit has repeatedly stated that qualified immunity only protects officials performing "discretionary functions." *See Simons v. Fitzgerald*, 287 Fed. App'x 924, 926 (2d Cir. 2008) ("'Qualified immunity shields government officials performing discretionary functions from liability for civil damages . . . .'" (quoting *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007))); *Piscottano v. Town of Somers*, 396 F. Supp. 2d 187, 208 (D. Conn. 2005) ("'The qualified immunity doctrine protects government officials from civil liability in the performance of discretionary functions as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" (quoting *Lee v. Sandberg*, 136 F.3d 94, 100 (2d Cir. 1997))).

When analyzing qualified immunity in the context of a suit for damages based on an arrest allegedly without probable cause, a police officer is immune from such suit "'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 416 (2d Cir. 1999) (quoting *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir. 1991)). "The right not to be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right." *Golino,* 950 at 870. However, it is also well-settled that "the issue of the reasonableness of an arrest or a search for purposes of a Fourth Amendment inquiry is distinct from the issue of objective reasonableness for purposes of a qualified immunity inquiry." *Provost v. City of Newburgh,* 262 F.3d 146, 167 n.5 (2d Cir. 2001) (Newman, J., dissenting in part) (citing *Anderson v. Creighton,* 483 U.S. 635, 641 (1987) ("It simply does not follow immediately from the conclusion that it was firmly established that warrantless searches not supported by probable cause and exigent circumstances violate the Fourth Amendment that [the] search was objectively legally

unreasonable.")) (additional citation omitted). In *Anderson v. Creighton*, the Supreme Court held that "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials— like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable." 483 U.S. at 641.

The Second Circuit has defined this standard, which is often referred to as "arguable probable cause," as follows: "Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well established law." *Cerrone v. Brown,* 246 F.3d 194, 202-03 (2d Cir 2001) (internal quotation marks omitted). Moreover, under that standard, "an 'arresting officer is entitled to qualified immunity as a matter of law if the *undisputed facts* and all permissible inferences favorable to the plaintiff show . . . that officers of reasonable competence could disagree on whether the probable cause test was met.'" *McClellan v. Smith,* 439 F.3d 137, 147-48 (2d Cir. 2006) (quoting *Robison v. Via,* 821 F.2d 913, 921 (2d Cir. 1987)).

As the Second Circuit has also noted, qualified immunity "is said to be justified in part by the risk that the 'fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *Id*. at 147 (quoting *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999)). Thus, qualified immunity is not merely a defense, but is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Accordingly, courts should determine the availability of qualified immunity "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

With respect to the summary judgment phase, the Second Circuit has held that courts should cloak defendants with qualified immunity at this juncture "only 'if the court finds that the asserted rights were not clearly established, or if the evidence is such that, even when it is viewed in the light most favorable to the plaintiff[] and with all permissible inferences drawn in [his] favor, no rational jury could fail to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right.'" *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003) (quoting *Williams v. Greifinger*, 97 F.3d 699, 703 (2d Cir. 1996)); *see also Oliveira v. Mayer*, 23 F.3d 642, 649 (2d Cir. 1994) ("Though [qualified] [i]mmunity ordinarily should be decided by the court, that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required." (internal quotation marks and citations omitted)); *Stancuna v. Sherman*, 563 F. Supp. 2d 349, 356 (D. Conn. 2008) ("Here, the court finds that summary judgment on qualified immunity grounds is inappropriate. As the Second Circuit has held, [w]hen a motion for summary judgment is made in the context of a qualified immunity defense, the question of whether the factual disputes are material is even more critical. As noted above, there are issues of material fact in this case that this court may not decide. These issues of fact are critical to determining whether [the defendant] was operating under a reasonable belief as to what kind of search he was permitted to conduct." (internal quotation marks and citation omitted)).

### 2. Application

In the instant case, the Court concludes that the current record does not provide a sufficient basis to determine whether the individual Village Defendants are entitled to qualified immunity. As discussed more fully *supra*, plaintiff has adduced evidence sufficient to create material issues of fact as to whether the Village Defendants arrested him, and as to the probable cause underlying his arrest and prosecution. Specifically, plaintiff has highlighted testimony from his own deposition, that of Officer Moss, and Dwyer's sworn affidavit indicating that the Village Defendants did not provide Nassau County with Dwyer's statement exonerating plaintiff. It is well-settled that qualified immunity would not exist if a plaintiff proved that a police officer intentionally withheld exculpatory information from prosecutors. *See, e.g., Russo v. City of Bridgeport*, 479 F.3d 196, 211-12 (2d Cir. 2007) (no qualified immunity if police officers intentionally hid exculpatory evidence). In addition, plaintiff has pointed to testimony and documents contradicting the existence of an eyewitness who incriminated plaintiff. Although the Village Defendants dispute these allegations and argue that they are entitled to qualified immunity, there is simply insufficient information at this stage to determine whether the conduct of the individual officers in this case is protected by qualified immunity. *See McClellan*, 439 F.3d at 148-49 (2d Cir. 2006) (reversing grant of qualified immunity because "there is nothing in the present record to indicate whether 'reasonable officers would disagree' as to the propriety of [the officer's] actions").

Thus, the motion for summary judgment on qualified immunity grounds is denied without prejudice to renewal at the close of the evidence at trial.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Village Defendants' motion for summary judgment in its entirety.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: November 30, 2016
Central Islip, NY

\*\*\*

Plaintiff is represented by Alexander R. Klein and Amy Beth Marion of Barket, Marion, Epstein & Kearon LLP, 666 Old County Road, Suite 700, Garden City, NY 11530. Village Defendants are represented by William J. Garry and Kadion Dwayne Henry of Harris Beach PLLC, 333 Earle Ovington Boulevard, Suite 901, Uniondale, NY 11553.